**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**at Baltimore**

| | | |
|---|---|---|
| **IN RE:** | * | |
| **KARA ANNE DIPIETRO** | * | **(Chapter 11)** |
| | | **(Subchapter V)** |
| **Debtor.** | * | **Case No. 23-13304-NVA** |

* * * * * * * * * * * * *

| | | |
|---|---|---|
| **STATE EMPLOYEES CREDIT UNION OF MARYLAND, INCORPORATED** | * | |
| | * | |
| **Plaintiff,** | | |
| | * | |
| **v.** | | **Adv. Proc. No.___________________** |
| | * | |
| **KARA ANNE DIPIETRO** | | |
| | * | |
| **Defendant.** | | |
| | * | |

* * * * * * * * * * * * *

**COMPLAINT TO DETERMINE NONDISCHARGEABILITY OF DEBT**

Plaintiff, State Employees Credit Union of Maryland, Incorporated ("SECU" or "Plaintiff"), by and through its undersigned attorneys, and pursuant to 11 U.S.C. § 523(a)(2)(B), files this Complaint (the "Complaint") requesting that the pre-petition sums owed to SECU by Defendant Kara Anne DiPietro ("Ms. DiPietro" or "Defendant") be determined to be non-dischargeable. In support thereof SECU alleges as follows:

**Jurisdiction and Venue**

1. This is a core proceeding under 28 U.S.C § 157(b)(2)(I) and is brought pursuant to 11 U.S.C. §§ 523(a)(2)(B) and Rule 4007 of the Federal Rules of Bankruptcy Procedure.

2. This Court has jurisdiction as to the claims for relief sought herein under 28 U.S.C. §§ 157 and 1334.

3. Venue is proper pursuant to 28 U.S.C. § 1409(a).

4. SECU consents to entry of a final judgment by the Bankruptcy Court.

5. This adversary proceeding is brought in connection with the Chapter 11 case filed by Ms. DiPietro, as case number 23-13304.

**The Parties**

6. Holdings Management Company ("HMC") is a Maryland corporation with its principal office located at 8705 Bollman Place, Suite 100, Savage Maryland, 20763. HMC is currently a debtor under Chapter 11 (Subchapter V) of the Bankruptcy Code (Case No. 23-11233) (the "HMC Bankruptcy").

7. Ms. DiPietro is a Maryland domiciliary who resides at 1836 Landrake Road, Towson, Maryland 21204.

8. Ms. DiPietro was, at all relevant times, the president and CEO of HMC, and controlled all decisions and statements to SECU relevant in the issues herein.

9. Ms. DiPietro was, at all relevant times was an "insider" of HMC.

10. SECU is a Maryland Corporation with a principal office located at 971 Corporate Boulevard, Linthicum, MD 21090.

**Statement of Facts**

11. On or about September 7, 2021, Plaintiff provided a $400,000.00 commercial Revolving Line of Credit to HMC (the "Loan").

12. The terms of the Loan are set forth in various loan documents, including, without limitation, a Business Loan Agreement, a Promissory Note (the "Note"), Commercial Security

Agreement (the "Security Agreement"), and a Commercial Guaranty from Ms. DiPietro (the "Guaranty") (collectively the "Loan Documents"), a true and correct copy of which are attached hereto and incorporated by this reference as **Exhibit 1** through **Exhibit 4**, respectively.

13. As a condition of the Loan, Ms. DiPietro provided to SECU a personal guaranty, the nature of which was absolute, unconditional and unlimited. *See* **Exhibit 1** at p. 2 ("Guaranties"); *see also* **Exhibit 4** at p. 1 ("CONTINUING GUARANTEE OF PAYMENT AND PERFORMANCE").

14. Pursuant to the Loan Documents, the Loan originally had a maturity date of September 1, 2022 (the "Original Maturity Date").

15. Prior to the Original Maturity Date, HMC was required to make interest-only monthly payments, and HMC was required to pay the entire principal balance of the Loan, plus any additional interest or other sums due under the Loan, on the Original Maturity Date. *See* **Exhibit 2** at p. 1 ("PAYMENT"). Upon the Original Maturity Date, and absent demand being earlier made, the entire principal balance, as well as all accrued unpaid interest and other amounts due under the Loan were to become due in one "balloon" payment. *Id.*

16. Ms. DiPietro executed the Guaranty on behalf of herself and executed each of the other Loan Documents on behalf of HMC. *See* **Exhibits 1** through **4**.

17. To induce SECU to accept her Guaranty and agree to enter into the Loan and extend credit to HMC, Ms. DiPietro completed and submitted to SECU a Personal Financial Statement dated August 4, 2021 (the "First PFS"), a true and correct copy of which is attached hereto and incorporated by this reference as **Exhibit 5**.

18. In fact, in the Guaranty, Ms. DiPietro "represent[ed] and warrant[ed] to Lender [SECU] that … upon Lender's request, Guarantor will provide to Lender financial and credit

information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial information is provided…." **Exhibit 4** at pp. 1-2 ("GUARANTOR'S REPRESENTATIONS AND WARRANTIES").

19. In the First PFS, Ms. DiPietro represented to SECU that "my income and assets (and not the income and assets of another person) shall be the basis for repayment of the credit requested." **Exhibit 5**.

20. Above her signature on the First PFS, Ms. DiPietro further represented to SECU:

> I hereby certify the above and the statements contained in the attachments are true and accurate as of the date hereof. The statements are made for the purpose of either obtaining a loan or guaranteeing a loan. I understand FALSE statements my [sic] result in forfeiture and possible prosecution by the Attorney General (Ref. 18 U.S.C. 1001).

**Exhibit 5** at p. 4.

21. In the Business Loan Agreement, Ms. DiPietro acknowledged that "[t]he representations and warranties set forth in this Agreement, in the Related Documents, and in any document or certificate delivered to Lender under this Agreement are true and correct" was a condition precedent to SECU making the Loan. *See* **Exhibit 1** at p. 1 ("CONDITIONS PRECEDENT TO EACH ADVANCE"); *see also id.* at p. 6 ("Related Documents" includes "guaranties").

22. In reasonable, justifiable and detrimental reliance on Ms. DiPietro's representations in her First PFS and Guaranty, SECU made the Loan to HMC and disbursed funds under the Loan to HMC.

23. By on or about February 9, 2022, SECU had disbursed to HMC the sum of Four Hundred Thousand Dollars ($400,000.00) – the credit limit.

24. Under the Loan, HMC was going to be required to pay the entire principal balance of Four Hundred Thousand Dollars ($400,000.00) by September 1, 2022. *See* **Exhibit 2** at p. 1 ("PAYMENT").

25. After the Loan was made, and fully drawn down, and with the Original Maturity Date fast approaching, HMC though Ms. DiPietro approached Plaintiff about changing the terms of Loan, including extending the maturity date and changing the Loan from a revolving loan to a term loan.

26. To induce SECU to modify the Loan so she could avoid an imminent default thereunder for failing to pay the total balance owed, Ms. DiPietro provided SECU with an updated Personal Financial Statement dated August 5, 2022 (the "Second PFS").[1] A true and correct copy of the Second PFS is attached hereto and incorporated by reference herein as **Exhibit 6**.

27. As with the First PFS, Ms. DiPietro acknowledged in the Second PFS that "my income and assets (and not the income and assets of another person) shall be the basis for repayment of the credit requested." *Id.* at p. 1. She also stated, directly above her signature:

> I hereby certify the above and the statements contained in the attachments are true and accurate as of the date hereof. The statements are made for the purpose of either obtaining a loan or guaranteeing a loan. I understand FALSE statements my [sic] result in forfeiture and possible prosecution by the Attorney General (Ref. 18 U.S.C. 1001).

*Id.* at p. 3.

28. In reasonable, justifiable and detrimental reliance on Ms. DiPietro's Second PFS, SECU agreed to modify the Loan and entered into a Change in Terms Agreement dated September

[1] The First PFS and the Second PFS are collectively referred to herein as the "Personal Financial Statements."

6, 2202. A true and correct copy of the Change in Terms Agreement is attached hereto as **Exhibit 7** and incorporated by this reference herein. The Change in Terms Agreement altered the terms of the Agreement by, among other things, converting the revolving line of credit to a term loan, causing the balance to be paid with monthly principal and interest payments and extending the maturity date by five additional years, until September 1, 2027 (the "Extended Maturity Date"). *See* **Exhibit 7** at p. 1.

29. SECU reasonably, justifiably and detrimentally relied on the representations made by Ms. DiPietro in the Second PFS in entering to the Restructured Loan.

**The Personal Financial Statements**

30. In the First PFS, Ms. DiPietro represented that she had assets totaling Four Million Eight Hundred Ninety-One Thousand Two Hundred Nineteen Dollars ($4,891,219.00) and only Eight Hundred Thirty-Eight Thousand Two Hundred Fifty Dollars ($838,250.00) of total liabilities, for a net worth of Four Million Fifty-Two Thousand Nine Hundred Sixty-Nine Dollars ($4,052,969.00):

| SECTION 3- STATEMENT OF FINANCIAL CONDITION (Complete All Pages) | | | |
|---|---|---|---|
| ASSETS | ($) | LIABILITIES | ($) |
| Cash on Deposit | 25,000 | Debts Owed to Banks (Schedule C) | 45,250 |
| Other Marketable Securities | 1,000 | Debts/Accounts owed to Others (Schedule D) | |
| Notes and Accounts Due | | Real Estate Mortgages (Schedule A) | 518,000 |
| Cash Value of Life Insurance | 16,000 | Taxes Accrued | 250,000 |
| Real Estate (Schedule A) | 1,105,000 | Taxes Paid Through | |
| Partnerships (Schedule E) | | City & County: Year | |
| Stocks, Bonds, etc. (Schedule B) | | State: Year | |
| Vehicles (Make/Model/Year) | 53,724 | Federal: Year | |
| | | | |
| Other Assets | 3,690,495 | Other Liabilities | 25,000 |
| | | | |
| | | | |
| | | Total Liabilities | 838,250 |
| | | Net Worth | 4,052,969 |
| Total Assets | 4,891,219 | Total Liabilities and Net Worth | 4,891,219 |

*See* **Exhibit 5** at p. 1.

31. In contrast to her First PFS, which reported her total assets at Four Million Eight Hundred Ninety-One Thousand Two Hundred Nineteen Dollars ($4,891,219.00), Ms. DiPietro's Petition filed 22 months later reported her total assets as being worth only Four Hundred Ninety-Two Thousand Four Hundred Eighty-One Dollars and Fifty-One Cents ($492,481.51). *See Voluntary Petition*, a true and correct copy of which is attached hereto and incorporated by reference herein as **Exhibit 8**.

32. Upon information and belief, Ms. DiPietro's First PFS inflated the actual value of her total assets by as much as Nine (9) times their worth.

33. Ms. DiPietro's First PFS valued her real estate located at 1836 Landrake Road, Towson, Maryland 21204 (the "Landrake Property") at Six Hundred Fifteen Thousand Dollars ($615,000.00), **Exhibit 5** at p. 2, yet her Petition that she filed with this Court about 21 months later states that the value of the Landrake Property is only Four Hundred Sixty Thousand Dollars ($460,000.00). *See* **Exhibit 8**.

34. In the First PFS, Ms. DiPietro listed real estate located at 8405 Ellison Road, Lutherville, Maryland 21093 (the "Ellison Property") as real estate she owned with Rich DiPietro. *See* **Exhibit 5** at p. 2. She valued the Ellison Property at Five Hundred Fifteen Thousand Dollars ($515,000.00).

35. However, in her Petition, she listed the Ellison Property as her "ex-husband's home." *See* **Exhibit 8** at Schedule A/B, Part 1.1, and excluded the Ellison Property in her calculation of the total dollar value of her interest in real estate. *Id.*

36. In her 341 meeting of creditors in this bankruptcy case, Ms. DiPietro testified that "I don't have an interest [in] that property," referring to the Ellison Property. *See Kara DiPietro*

*341 Meeting of Creditors Trans.*, 5:6-10 (June 7, 2023), a true and correct copy of which is attached hereto and incorporated by reference herein as **Exhibit 9**.

37. Ms. DiPietro initially testified that her ex-husband Richard DiPietro was to remove her name from the Ellison Property pursuant to their separation agreement and property settlement agreement. *See id.* at 5:11-18. However, she later admitted under oath that she divorced Richard DiPietro in 2014, four years before she was put on the title in 2018, *id.* at 5:19-6:3; 15:21-16:2; 16:10-14.

38. Nonetheless, Ms. DiPietro testified that she helped Richard DiPietro "initially pay for the – a portion of the downpayment and in order to do that I requested to be on the title," *id.* at 16:17-19, but that "my name was to be taken off." *Id.* at 5:8-9; *see also id.* at 17:4-5 ("I wanted to come off the title. But the paperwork I guess hasn't been filed yet."

39. Despite her testimony and the position taken under oath in her Petition that she has no interest in the Ellison Property and was not supposed to continue to have an interest in the Ellison Property, Ms. DiPietro represented to SECU in her First PFS that she "OWNED" the Ellison Property with Richard DiPietro, implying that her interest in the Ellison Property was worth Two Hundred Fifty-Seven Thousand Five Hundred Dollars ($257,500.00) (half of the "Present Market Value ($)" of said property that she reported as being Five Hundred Fifteen Thousand Dollars ($515,000.00).[2] *See* **Exhibit 5** at p. 2.

40. Thus, in her First PFS, Ms. DiPietro misrepresented to SECU that she had an ownership interest in the Ellison Property and inflated the value of her total real estate interests by at least approximately Four Hundred Twelve Thousand Five Hundred Dollars ($412,500.00), which amount would have covered the entire credit limit of the Loan that she was guarantying.

[2] Ms. DiPietro reported in her Petition that the Ellison Property had a current value of "Unknown" and a current value of her portion of said property as "Unknown." *See* **Exhibit 8** at Schedule A/B, Part 1.1.

41. In her First PFS, Ms. DiPietro stated that she had "No" contingent liabilities and no liabilities "[a]s endorser, co. [sic] maker or guarantor." *See* **Exhibit 5** at p. 2.

42. However, upon information and belief, at the time she submitted the First PFS, Ms. DiPietro had contingent liability on one or more other financial obligations, including as a guarantor. For example, and without limitation, according to the Proof of Claim filed in this case by Newtek Small Business Finance, LLC ("Newtek"), on July 3, 2018, Ms. DiPietro executed a personal guaranty of her company H.M.C., Inc.'s Small Business Administration ("SBA") loan in the principal amount of Seven Hundred Seventy Thousand Dollars ($770,000.00). *See Newtek Proof of Claim*, a true and correct copy of which is attached hereto and incorporated by reference herein as **Exhibit 10**.

43. Thus, Ms. DiPietro's representation in her First PFS that she had no contingent liabilities and no liabilities as a guarantor was materially false.

44. Ms. DiPietro represented in her First PFS that her income taxes were "settled" through "2028." *See* **Exhibit 5** at p. 2.

45. However, according to the Proof of Claim filed in this case by the Internal Revenue Service (the "IRS"), at the time that she provided her First PFS to SECU, Ms. DiPietro owed the IRS approximately Three Hundred Ninety-Six Thousand Four Hundred Thirty-Seven Dollars and Two Cents ($396,437.02) in income taxes and civil penalties for the tax period running through June 30, 2021. *See IRS Proof of Claim*, a true and correct copy of which is attached hereto and incorporated by reference herein as **Exhibit 11**.

46. Further, according to the Proof of Claim filed in this case by the Comptroller of Maryland, at the time that she provided her First PFS to SECU, Ms. DiPietro owed at least Fifty-Seven Thousand Five Hundred Seven Dollars ($57,507.00) in withholding taxes to the

Comptroller of Maryland for the tax periods running through May 31, 2020. *See Maryland Comptroller Proof of Claim*, a true and correct copy of which is attached hereto and incorporated by reference herein as **Exhibit 12**.

47. Thus, Ms. DiPietro's representation in her First PFS that her income taxes were "settled" was materially false.

48. Ms. DiPietro reported only Twenty-One Thousand Five Hundred Twenty Dollars ($21,520.00) of debt owed to financial institutions, *see* **Exhibit 5** at p. 4, and reported no other debts and accounts exceeding $1,000 owed to others, excluding mortgages. *Id.*

49. However, upon information and belief, at the time she completed the First PFS, Ms. DiPietro owed substantially more than Twenty-One Thousand Five Hundred Twenty Dollars ($21,520.00) of debt owed to financial institutions and owed substantial debts exceeding $1,000 to other types of creditors.

50. Thus, Ms. DiPietro's representations in her First PFS that she had only Twenty-One Thousand Five Hundred Twenty Dollars ($21,520.00) of debt owed to financial institutions or others, excluding mortgages, was materially false.

51. Approximately one year later, on or about August 5, 2022, Ms. DiPietro submitted to SECU the Second PFS, in which she represented that she had assets totaling Five Million Six Hundred One Thousand Dollars ($5,601,000.00) and liabilities totaling only Seven Hundred Thirty-Five Thousand Dollars ($735,000.00), for a total net worth of Four Million Eight Hundred Sixty-Six Thousand Dollars ($4,866,000.00):

| SECTION 3- STATEMENT OF FINANCIAL CONDITION (Complete All Pages) | | | |
|---|---|---|---|
| ASSETS | ($) | LIABILITIES | ($) |
| Cash on Deposit | 6,500 | Debts Owed to Banks (Schedule C) | 27,500 |
| Other Marketable Securities | | Debts/Accounts owed to Others (Schedule D) | 19,500 |
| Notes and Accounts Due | 25,000 | Real Estate Mortgages (Schedule A) | 365,000 |
| Cash Value of Life Insurance | 7,500 | Taxes Accrued | (95,000) |
| Real Estate (Schedule A) | 1,310,000 | Taxes Paid Through | 2020 |
| Partnerships (Schedule E) | | City & County: Year | Baltimore, County |
| Stocks, Bonds, etc. (Schedule B) | | State: Year | Maryland |
| Vehicles (Make/Model/Year) | 52,000 | Federal: Year | 2019 |
| Landrover/Range Rover/2016 | | | |
| Other Assets | | Other Liabilities Figure | 18,500 |
| Business Assets | 4,200,000 | Est 2021 Tax | 155,000 |
| | | Misc. | 150,000 |
| | | Total Liabilities | 735,000 |
| | | Net Worth | 4,866,000 |
| Total Assets | 5,601,000 | Total Liabilities and Net Worth | 5,601,000 |

*See* **<u>Ex. 8</u>** at p. 1.

52. In her Petition in this bankruptcy case filed approximately Nin (9) months after she provided the Second PFS to SECU, Ms. DiPietro reported total assets of only Four Hundred Ninety-Two Thousand Four Hundred Eighty-One Dollars and Fifty-One Cents ($492,481.51). *See* **<u>Exhibit 8</u>**.

53. Upon information and belief, Ms. DiPietro's Second PFS inflated the actual value of her total assets more than Eleven (11) times their worth.

54. In the Second PFS, Ms. DiPietro substantially increased the reported value of both the Landrake Property and the Ellison Property, representing the Landrake Property to be worth Seven Hundred Twenty-Five Thousand Dollars ($725,000.00) and the Elllison Property to be worth Five Hundred Eight-Five Thousand Dollars ($585,000.00). *See id.*

55. Ms. DiPietro inflated the value of the Landrake Property in the Second PFS by approximately Two Hundred Sixty-Five Thousand Dollars ($265,000.00) higher than the value of Four Hundred Sixty Thousand Dollars ($460,000.00) that she would report on her Petition just Nine (9) months later.

56. As with the First PFS, Ms. DiPietro did not disclose to SECU that she claimed no interest in the Ellison Property and that she contended that her name was supposed to come off the title. Instead, she led SECU to reasonably believe that she still owned a one-half interest in said property.

57. Ms. DiPietro reported in her Second PFS that the Ellison Property was not encumbered by a mortgage, writing "n/a" in the "Balance Owed ($)" column of the real estate chart and leaving blank the column entitled, "Mortgage Held by Pymt(s) per month." *Id.*

58. Yet, according to the Land Records for Baltimore County, at the time of submitting the Second PFS, the Ellison Property was still subject to the Deed of Trust dated March 25, 2020, recorded at Book 42700, Page 166, securing a loan in the principal amount of Four Hundred Eighty-One Thousand Seven Hundred Eighty-Six Dollars ($481,786.00).

59. Thus, Ms. DiPietro misrepresented in her SECU PFS that her ownership interest in the Ellison Property was worth approximately Two Hundred Ninety-Two Thousand Five Hundred Dollars ($292,500).

60. Taken together, Ms. DiPietro's misrepresented real estate interests exceeded the entire credit limit of the Loan that she was guarantying.

61. In her Second PFS, Ms. DiPietro left blank the "contingent liabilities" and "guarantor" liabilities section, implying that she still had no such liabilities.

62. In actuality, upon information and belief, at the time that she submitted the Second PFS, Ms. DiPietro was a personal guarantor on one or more obligations, including, without limitation, the SBA Loan, *see* **Exhibit 10**, *supra*, as well as One Million Five Hundred Thousand Dollars ($1,500,000.00) that her company Holdings Management Company owed to Sandy Spring Bank, and debts to White Cap, L.P. f/k/a HD Supply Construction Supply Ltd. and Billd Exchange,

LLC. *See Proofs of Claim for Sandy Springs Bank, White Cap, L.P. and Billd Exchange, LLC*, true and correct copies of which are attached hereto and incorporated by reference herein as **Exhibits 13-15**, respectively.

63. In her Second PFS, Ms. DiPietro also misrepresented that her taxes were "Paid Through … 2020" and that her "[i]ncome tax [was] settled through (date) 2020." *See* **Exhibit 8** at pp. 1-2.

64. However, both representations were materially false. As set forth above, according to the IRS and Maryland Comptrollers' respective proofs of claim filed in this bankruptcy case, at the time of submitting the Second PFS, Ms. DiPietro owed those taxing authorities substantial sums of money in income taxes.

65. All of Ms. DiPietro's materially false statements in the Personal Financial Statements were made concerning her or an insider's financial condition and were made with the intent to deceive SECU.

66. Neither Ms. DiPietro nor Holdings Management Company have filed amended schedules in their respective bankruptcy cases.

67. SECU reasonably relied on the First PFS in making the Loan and reasonably relied on the Second PFS in agreeing to the Change in Terms Agreement.

68. Following their subsequent default on the Loan, on or about February 2, 2023, the Circuit Court of Maryland for Baltimore County entered a confessed judgment against Holdings Management Company and Ms. DiPietro, jointly and severally, in the principal amount of Three Hundred Ninety-Three Thousand Nine Hundred Ninety-Three Dollars and Ninety Cents ($393,993.90), plus pre-judgment interest in the amount of Nine Thousand Five Hundred Forty-Eight Dollars and Seventy-Seven Cents ($9,548.77), plus late fees of One Thousand One Hundred

Seventy-Five Dollars and Forty-Nine Cents ($1,175.49), plus reasonable attorneys' fees of Eight Hundred Ninety-One Dollars ($891.00), plus costs, which total Two Hundred Twelve Dollars and Eighteen Cents ($212.18) as of the judgment date. *See SECU Proof of Claim*, a true and correct copy of which is attached hereto and incorporated by reference herein as **Exhibit 16** at Ex. C.

69. As of the Petition Date, the balance of the judgment against Ms. DiPietro was Four Hundred Seventeen Thousand Eight Hundred Dollars and Four Cents ($417,800.04). *See id.*

## Count I
## (Non-Dischargeability of Debt, Pursuant to 11 U.S.C. §523(a)(2)(B))
## (First PFS)

70. Plaintiff repeats and incorporates the foregoing allegations and information set for in Paragraphs 1-69 as though more fully stated herein.

71. On or about August 4, 2021, Ms. DiPietro completed, submitted to SECU and used the written First PFS respecting her or an insider's financial condition that was materially false or contained materially false representations. *See* **Exhibit 5**.

72. Ms. DiPietro caused to be made or published the First PFS with the intent to deceive SECU and induce it to enter into the Loan with Holdings Management Company, the terms and approval of which Loan were conditioned on the provision of her personal guaranty. *See* **Exhibit 1** at p. 2 ("**Guaranties**").

73. SECU, to whom Ms. DiPietro is liable for the debt owed under the Loan, reasonably relied on the First PFS and the representations contained therein in deciding whether to enter into the Loan. *Id.* at p. 1 ("**REPRESENTATIONS AND WARRANTIES**"); **Exhibit 4** at pp. 1-2 ("**GUARANTOR'S REPRESENTATIONS AND WARRANTIES**").

74. Ms. DiPietro obtained the Loan of money for Holdings Management Company by providing the materially false First PFS to SECU.

75. Without limitation, in making the First PFS, Ms. DiPietro grossly over-inflated her assets, grossly underreported her liabilities, misrepresented that she had no contingent or guarantor liabilities, misrepresented that her income taxes were "settled," misrepresented the value of her real estate interests, misrepresented the debts she owed to financial institutions, and omitted the debts over $1,000 that she owed to others. *See* **Exhibit 5**.

76. Defendant caused the First PFS to be executed with her signature and she provided it to Plaintiff, and knew at that time that those representations made were materially false, untrue, and misleading, despite her promise in the Guaranty that "all such financial information which currently has been and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present[s] Guarantor's financial condition as of the dates the financial information is provided." *See* **Exhibit 4** at p. 2 ("**GUARANTOR'S REPRESENTATIONS AND WARRANTIES**") (emphasis in original); *see also* **Exhibit 5**.

77. Defendant's misrepresentations in her First PFS misled SECU as it evaluated the strength of her personal guaranty, which, in turn, misled SECU as it decided whether to make the Loan to Holdings Management Company.

78. Plaintiff has suffered damages as a direct and proximate consequence of Defendant's materially false misrepresentations, and allowing Defendant to shirk her financial guarantees to Plaintiff, on behalf of Holdings Management Company, would be tantamount to allowing her to financially benefit from the fraudulent misrepresentations which she intentionally made to induce Plaintiff's into making the Loan.

79. Defendant's activities described above constitute obtaining money or the extension, renewal, or refinancing of credit, by materially false written statement regarding the Defendant's

financial condition, on which Plaintiff reasonably relied, and which Defendant made with the intent to deceive.

80. Plaintiff is entitled to an Order from this Honorable Court declaring that, pursuant to 11 U.S.C. § 523(a)(2)(B), Defendant's debt to Plaintiff is non-dischargeable.

81. SECU relied on First PFS in making the Loan and restructuring the Loan prior its Original Maturity Date.

82. As of the Petition date, the debt owed by Ms. DiPietro to SECU under the Loan was $417,800.04. *See SECU Proof of Claim*, **Exhibit 16**.

83. Pursuant to the Guaranty and other Loan documents, Ms. DiPietro agreed to pay SECU's "reasonable attorneys' fees and all of Lender's other collection expenses … and including without limitation additional legal expenses for bankruptcy proceedings." *See* **Exhibit 4** at p. 3 ("Attorneys' Fees; Expenses"). Additionally, Ms. DiPietro agreed in the Guaranty that the attorneys' fees provision "will survive the entry of, and not be merged into, any judgment." *Id.*

84. In furtherance of that contractual language, in entering the confessed judgment against Ms. DiPietro that underlies SECU's Proof of Claim in this bankruptcy, the Circuit Court for Baltimore County expressly ruled that "the attorneys' fees provisions of the loan documents underlying the above-captioned case shall not merge into the judgment but shall survive the same and shall be binding and conclusive on the parties for all time." *See* **Exhibit 16** at Ex. C.

**WHEREFORE,** Plaintiff State Employees Credit Union of Maryland, Incorporated prays for the entry of an Order of this Honorable Court finding that:

A. The pre-petition amount of Four Hundred Seventeen Thousand Eight Hundred Dollars and Four Cents ($417,800.04) owed by Defendant to Plaintiff is nondischargeable in

Defendant's currently pending bankruptcy, in any other bankruptcy under which this case may be converted, and in any future bankruptcy case filed by or against Defendant; and further

C. Granting interest, reasonable attorneys' fees, expenses and costs herein incurred; and further

D. For such other further relief as this cause may require

**Count II**
**(Non-Dischargeability of Debt, Pursuant to 11 U.S.C. §523(a)(2)(B))**
**(Second PFS)**

85. Plaintiff repeats and incorporates the foregoing allegations and information set for in Paragraphs 1-84 as though more fully stated herein.

86. On or about August 5, 2022, Ms. DiPietro completed, submitted to SECU and used the written Second PFS respecting her or an insider's financial condition that was materially false or contained materially false representations. *See* **Exhibit 6**.

87. Ms. DiPietro caused to be made or published the Second PFS with the intent to deceive SECU and induce it to enter into the Change in Terms Agreement, in order to avoid an imminent default on the Loan on or about September 1, 2022, and to extend the Original Maturity Date until September 1, 2027.

88. SECU, to whom Ms. DiPietro is liable for the debt owed under the Loan, reasonably relied on the Second PFS and the representations contained therein in deciding whether to enter into the Change in Terms Agreement, extend the Original Maturity Date of the Loan and provide the other benefits to Holdings Management Company and Ms. DiPietro provided therein.

89. Ms. DiPietro obtained the money, extension, renewal or refinancing of credit under the Change in Terms Agreement for Holdings Management Company by providing the materially false Second PFS to SECU.

90. Without limitation, in making the Second PFS, Ms. DiPietro grossly over-inflated her assets, grossly underreported her liabilities, misrepresented that she had no contingent or guarantor liabilities, misrepresented that her income taxes were "settled" and "[p]aid" through the year 2020, misrepresented the value of her real estate interests, misrepresented the debts she owed to financial institutions, and omitted the debts over $1,000 that she owed to others. *See* **Exhibit 6**.

91. Defendant caused the Second PFS to be executed with her signature and she provided it to Plaintiff, and knew at that time that those representations made were materially false, untrue, and misleading, despite her promise in the Guaranty that "all such financial information which currently has been and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present[s] Guarantor's financial condition as of the dates the financial information is provided." *See* **Exhibit 4** at p. 2 ("**GUARANTOR'S REPRESENTATIONS AND WARRANTIES**") (emphasis in original).

92. Defendant's misrepresentations in her Second PFS misled SECU as it evaluated the strength of her personal guaranty, which, in turn, misled SECU as it decided whether to enter into the Change in Terms Agreement and, *inter alia*, extend the Original Maturity Date of the Loan, only months before Ms. DiPietro and Holdings Management Company each filed for Chapter 11 bankruptcy.

93. Plaintiff has suffered damages as a direct and proximate consequence of Defendant's materially false misrepresentations, and allowing Defendant to shirk her financial guarantees to Plaintiff, on behalf of Holdings Management Company, would be tantamount to allowing her to financially benefit from the fraudulent misrepresentations which she intentionally made to induce Plaintiff's into entering into the Change in Terms Agreement.

94. Defendant's activities described above constitute obtaining money or the extension, renewal, or refinancing of credit, by materially false written statement regarding the Defendant's financial condition, on which Plaintiff reasonably relied, and which Defendant made with the intent to deceive.

95. Plaintiff is entitled to an Order from this Honorable Court declaring that, pursuant to 11 U.S.C. § 523(a)(2)(B), Defendant's debt to Plaintiff is non-dischargeable.

96. SECU relied on Second PFS in entering into the Change in Terms Agreement and restructuring the Loan prior its Original Maturity Date.

97. As of the Petition date, the debt owed by Ms. DiPietro to SECU under the Loan was $417,800.04. *See SECU Proof of Claim*, **Exhibit 16.**

98. Pursuant to the Guaranty and other Loan documents, Ms. DiPietro agreed to pay SECU's "reasonable attorneys' fees and all of Lender's other collection expenses … and including without limitation additional legal expenses for bankruptcy proceedings." *See* **Exhibit 4** at p. 3 ("Attorneys' Fees; Expenses"). Additionally, Ms. DiPietro agreed in the Guaranty that the attorneys' fees provision "will survive the entry of, and not be merged into, any judgment." *Id.*

99. In furtherance of that contractual language, in entering the confessed judgment against Ms. DiPietro that underlies SECU's Proof of Claim in this bankruptcy, the Circuit Court for Baltimore County expressly ruled that "the attorneys' fees provisions of the loan documents underlying the above-captioned case shall not merge into the judgment but shall survive the same and shall be binding and conclusive on the parties for all time." *See* **Exhibit 16** at Ex. C.

100. Plaintiff reasonably relied upon Defendant's written representations made in the Second PFS when deciding whether to enter into the Change in Terms Agreement and continue the business relationship with HMC and Defendant.

WHEREFORE, for the foregoing reasons, Plaintiff State Employees Credit Union of Maryland prays for the entry of an Order of this Honorable Court finding that:

A. The pre-petition amount owed to Plaintiff in the amount of Four Hundred Seventeen Thousand Eight Hundred Dollars and Four Cents ($417,800.04) is nondischargeable in Defendant's currently pending bankruptcy, in any other bankruptcy under which this case may be converted, and in any future bankruptcy case filed by or against Defendant; and further

C. Granting interest, reasonable attorneys' fees, expenses and costs herein incurred; and further

D. For such other further relief as this cause may require.

Respectfully submitted,

Date: August 17, 2023

*/s/ Marc E. Shach*

Marc E. Shach, Esquire, (Bar No. 06788)
Zachary J. A. Coon, Esquire (Bar No. 29431)
David E Baxter, Esquire (Bar No. 21194)
Coon & Cole, LLC
305 W. Chesapeake Ave., Suite 510
Towson, Maryland 21204
Main: (410) 244-8800
Facsimile: (410) 825-5941
E-mail: mes@cooncolelaw.com
zjac@cooncolelaw.com
deb@cooncolelaw.com
*Counsel to State Employes Credit Union of Maryland, Inc.*